537 So.2d 1022 (1988)
Tonya MANUEL, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATION SERVICES, Appellee.
No. 88-271.
District Court of Appeal of Florida, Fifth District.
December 15, 1988.
Rehearing Denied February 3, 1989.
Jerri A. Blair, of Carr & Blair, Leesburg, for appellant.
Linda K. Harris, Dist. III Legal Counsel, Gainesville, for appellee.
PER CURIAM.
AFFIRMED.
COBB, J., concurs.
SHARP, C.J., concurs specially with opinion.
COWART, J., dissents with opinion.
SHARP, Chief Judge, concurring specially.
I write to explain my reasons for joining in a PCA (without opinion) in this case. Whether "prospective neglect" or even "prospective abandonment" are valid grounds for termination of parental rights pursuant to section 39.01, Florida Statutes, are important legal issues which should be addressed by this court in a proper case. *1023 Had this been such a case, I would have done so.
After reviewing the record and transcript in this case, I conclude that actual abandonment had been established by clear and convincing evidence. It was one of the grounds set forth in the Petition for Permanent Commitment, and it was one ground relied upon by the trial judge in his judgment terminating parental rights.[1]
The evidence adduced at the hearing established the mother made no effort to visit the baby since its birth, and she rejected and ran from at least three state counselors (including one who worked with her in the Start Center), who were trying to help her prepare herself to care for the baby, and arrange visits.[2] She did not ask to see or visit the baby since the time of its birth, over a one-year period of time, and she did not give the child a name until pressed by HRS. In my view, this course of non-action, far in excess of one year, meets the statutory definition of abandonment.[3]
Further, there was no showing that the mother was prevented physically or mentally from visiting her child. Quite the opposite. She was encouraged, beseeched and sought after by the HRS counselors. But for her own reasons, she chose a course of conduct which, in essence, rejected her child  whether or not she consciously formulated such an intention.[4]
The trial court made a finding of abandonment, based on this evidence.[5] This is a sad, but not a precedent-setting case.
*1024 COWART, Judge, dissenting.
The mother in this case, whose parental rights are being permanently terminated, is similar to the mother in Gunter v. H.R.S., 531 So.2d 345 (Fla. 5th DCA 1988).
The mother in this case, Tonya Manuel, was 14 years of age when she gave birth to her child, Q.M., in a hospital. The baby was born prematurely and developed an infection. About one week after the child was born, H.R.S. initiated a dependency proceeding and H.R.S. took custody of the child directly from the hospital. The child's mother has never had actual custody, or control, or responsibility for her child. As the basis for permanently terminating the mother's rights, H.R.S. claims both the concept of prospective neglect discussed at length in the dissent in Gunter, and also claims that the mother has abandoned the child while it has been in the custody of H.R.S. in that the mother has not visited the child and has failed to comply with performance agreements, etc. The mother is a child herself, has no money, and no present "ability" to do that which she has failed, and has, herself, been the object of much H.R.S. activity which, rightly or wrongly, has resulted in the mother viewing H.R.S. as a powerful, hostile figure (such as many, unfortunately, view the police) to be feared and avoided.
The petition for permanent commitment is based in part on the fact that the mother herself was then committed to the Brevard Start Center for delinquent acts.[1] In this case, as in Gunter, the child mother is already pregnant again.
The general societal problem of what to do about children giving birth to children, and about mothers, with and without husbands, who cannot, because of mental, social, financial and other reasons, adequately physically provide the necessary care for the children is very, very serious, and one that should be openly considered by organized society and, specifically, by the legislature. Apparently, society cannot, or will not, do what is necessary to prevent the problem from occurring and will not openly seek the wisest solution to the problem. The problem is such that the public and media are little aware of it because it is handled in juvenile court proceedings which are confidential. Apparently the immediate solution is for H.R.S. to take control of the children and to throw the problem into the court on the questionable legal theories of "prospective neglect," "prospective abuse," "constructive abandonment" or some other theory or name. The "solution" to that problem, to which this is a dissent, is to affirm the trial court's order permanently terminating parental rights without a detailed consideration of the facts or the law in written opinions which demonstrate different and considered legal issues and solutions. Different legal opinions on varying factual patterns (of which this case is one) could, hopefully, cause the underlying problem to be better understood and to be considered by the highest court in the state which has the legitimate authority to make the final judicial decision as to (1) whether the basic problem is, under law, a problem of the judicial branch or legislative branch, (2) whether the facts and circumstances of each case fall within the statutes upon which the decisions are based, and, finally, (3) whether the statutes as applied are consistent with the constitutional rights of the mothers whose constitutional rights to their children are being terminated. A per curiam affirmed (PCA) decision by a district court of appeal bars review by the Florida Supreme Court and dissenting and special concurring opinions do not remedy that problem.
NOTES
[1] 12c. "The mother has made no effort to communicate with the child since the child was placed in the custody of the Department of Health and Rehabilitative Services, she has not visited with the child, given the child a name or made any effort to establish a meaningful relationship with said child."
[2] For example, Renee Rigdon, one of the social workers testified:

We had, and if the date is important, I can look it up, but there was a certain date, I believe it was in February or March, that I told Tonya and I did catch her at home on an afternoon and said that I would be by at 8:00 in the morning to pick her up to transport her over to the school so that we could get her signed up for the teenage mother classes. When I arrived at the house at 8:00, her grandmother informed me that she had already left and would not be going with me.
(TH) Did you make any attempt after that to contact her regarding the classes?
(W2) Yes, but she just wasn't there. She ... every time I came by Tonya, except for once, Tonya was gone and would go and stay somewhere for days at a time. It was very, very hard to catch up with where she was.
(TH) Was Tonya gone from her grandmother's house because she did not like the situation ...
(JB) I object. That calls for speculation.
(C) I tend to agree, the way you started off the question  I didn't hear it all, but ... objection sustained.
(TH) O.k. What ... how many contacts did you have with Tonya ...
(W2) They were attempted, monthly contacts at least. But, I did not in fact see Tonya monthly because she wasn't there and I left messages with the grandmother that I would be back two or three days later, for Tonya to please be there, and she was not there.
[3] § 39.01(1), Florida Statutes (Supp. 1986), states:

`Abandoned' means a situation in which the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the person responsible for the child's welfare, while being able, makes no provision for the child's support and makes no effort to communicate with the child, which situation is sufficient to evince a willful rejection of parental obligations. If the efforts of such parent or legal custodian, or person primarily responsible for the child's welfare to support and communicate with the child are, in the opinion of the court, only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned. The failure by any such person to appear in responses to actual or constructive service in a dependency proceeding shall give rise to a rebuttable presumption of such person's ability to provide for and communicate with the child.
[4] I also feel great sympathy for this young childmother. Her abandonment of the infant was no doubt caused by her youth, lack of judgment and common sense, and distrust of authority figures  her own family as well as HRS counselors. I can understand how these events came to pass. But that does not wipe out the fact that they did occur, and this infant was abandoned almost from birth.
[5] "The mother has neglected and abandoned the above named child in that she has never evidenced an ability to care for the child, nor has she taken any steps to learn to provide or care for the child. The mother has made no effort to communicate with the child since the child was placed in the custody of the Department of Health and Rehabilitative Services and has not visited the child or made any effort to establish a meaningful relationship with said child since the birth on Oct. 13, 1986."
[1] See In the Interest of B.W., 498 So.2d 946 (Fla. 1986).